**MENDES & MOUNT, LLP**
750 Seventh Avenue
New York, NY 10019
Eileen T. McCabe, Esq.
Jaimie H. Ginzberg, Esq.
Joseph J. Schwartz, Esq.
(212) 261-8000
Eileen.mccabe@mendes.com
Jaimie.ginzberg@mendes.com
Joseph.schwartz@mendes.com

*Attorneys for Defendants, Lamorak Insurance Company,*
*f/k/a OneBeacon America Insurance Company; Resolute*
*Management, Inc., as Administrator for Lamorak Insurance*
*Company; and Continental Insurance Company, Individually*
*and as Successor to Certain Liabilities of Harbor Insurance Company*

# UNITED STATES DISTRICT COURT

### for the

### Western District of New York

| | | |
|---|---|---|
| RHODA PEACE, | ) | Civil Action No.:15- cv-177 |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ONE BEACON AMERICA INSURANCE COMPANY, | ) | |
| et al. | ) | |
| | ) | |
| *Defendants* | ) | |
| | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT BY DEFENDANTS LAMORAK INSURANCE COMPANY,
f/k/a ONEBEACON AMERICA INSURANCE COMPANY, RESOLUTE
MANAGEMENT INC, AS ADMINISTRATOR FOR LAMORAK INSURANCE
COMPANY, AND CONTINENTAL INSURANCE COMPANY, INDIVIDUALLY AND
AS SUCCESSOR TO CERTAIN LIABILITIES OF HARBOR INSURANCE COMPANY**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

COUNTERSTATEMENT OF FACTS ............................................................................... 3

ARGUMENT ........................................................................................................................... 4

   I.   THE ARGUMENTS PRESENTED IN DEFENDANTS' OPPOSITION TO
      PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN THE *MINEWEASER*
      LITIGATION ARE INCORPORATED BY REFERENCE ............................................... 4

   II.  PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS THERE
      IS NO FINAL JUDGMENT TO ENFORCE. ....................................................................... 4

   III. PLAINTIFF FAILS TO DEMONSTRATE BODILY INJURY DURING THE
      DEFENDANTS' POLICY PERIODS ..................................................................................... 6

   IV. LAMORAK AND CONTINENTAL'S RESPECTIVE PRO RATA SHARES
      OF THE *PEACE* JUDGMENT ARE WELL BELOW $1.2 MILLION. .......................... 7

   V.  PLAINTIFF FAILS TO ESTABLISH THE NECESSARY ELEMENTS OF A
      FRAUDULENT CONVEYANCE CLAIM ......................................................................... 9

   VI. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER
      D.C.L. 273-a AS THE UNDERLYING *PEACE* LITIGATION WAS FILED
      AFTER THE SETTLEMENT AGREEMENTS WERE SIGNED. ................................ 12

CONCLUSION ..................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Home Products Corp. v. Liberty Mutual Ins. Co.*,
   748 F.2d 760 (2d. Cir. 1984) .................................................................................... 6

*Berner Trucking, Inc. v. Brown*,
   281 App. Div. 2d 924 (4th Dept 2001) ...................................................................... 15

*Chen v. New Trend Apparel, Inc.*,
   8 F.Supp.3d 406, 438 (S.D.N.Y. 2014) ...................................................................... 14

*Coleman v New Amsterdam Cas. Co.*,
   247 N.Y. 271, 275 (1928) ........................................................................................... 7

*Consolidated Edison Co. v. Allstate Ins. Co.*,
   98 N.Y.2d 208, 224 (2002) ......................................................................................... 8

*Continental Cas. Co. v. Employers Ins. Co. at Wausau*,
   60 A.D.3d 128 (1st Dep't 2008), *leave to app. denied*, 13 N.Y.3d 710 (2009) ...................... 6, 7

*Furlong v. Storch*,
   132 A.D.2d. 866 (1987) .............................................................................................. 15

*Hillside Manor Rehabilitation & Extended Care Ctr., LLC v. Dallu*,
   932 N.Y.2d 302, 304 (2d. Dept. 2011).................................................................... 11

*Lang v Hanover Ins. Co.*,
   3 N.Y.3d 350, 354-355 (2004) ................................................................................... 7

*Lippe v. Bairnco Corp.,*,
   9 Fed. Appx. 274, 282 (2d Cir. 2004) ................................................................... 12, 13

*Mt. McKinley Ins. Co. v. Corning Inc.*,
   2012 N.Y. Misc. LEXIS 6531, *21-26 (Sup. Ct. 2012)........................................... 9

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*,
   2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. September 10, 2002) ........................ 10, 14

*Olin Corp v. Insurance Co. of N.A.*,
    221 F.3d 307, 322-327 (2d. Cir. 2000)................................................................. 8, 10

*Olin Corp. v. Certain Underwriters at Lloyd's*,
    468 F.3d 120, 130-31 (2d Cir. 2006)..................................................................... 8

*Olin Corp. v. Ins. Co. of N. Am.*,
    2015 U.S. Dist. LEXIS 49682, *16 (S.D.N.Y. April 15, 2015 ................................ 10

*Promenade Nursing Home v. Cohen-Fleisher*,
    983 N.Y.S.2d 205 (N.Y. Sup. Ct. Kings County 2013) ......................................... 12

*Shelly v. Doe*,
    671 N.Y.S.2d 803 (3d Dept. 1998) ....................................................................... 11

*Standard Chartered Bank v. Kittay*,
    628 N.Y.S.2d 307, 307 (2d. Dept. 1995) .............................................................. 11

*Viking Pump Inc. v. Century Indemnity Co.*,
    2 A.3d 76 (Del. 2009)........................................................................................... 9, 10

## Statutes

N.Y. Debt. & Cred. Law § 271 ................................................................................... 11

N.Y. Debt. & Cred. Law § 273 ................................................................................... 12

N.Y. Debt. & Cred. Law § 273-a ............................................................................... 15

N.Y. Debt & Cred. Law § 276 ................................................................................... 14

New York Insurance Law §3420 ........................................................................ passim

## PRELIMINARY STATEMENT

Defendants Lamorak Insurance Company, f/k/a OneBeacon America Insurance Company ("Lamorak"), Resolute Management Inc., as Administrator for Lamorak, and Continental Insurance Company, Individually and as Successor to Certain Liabilities of Harbor Insurance Company, sued improperly herein as "Continental Insurance Company, Individually and as Successor in Interest to Harbor Insurance Company ('CNA')" ("Continental") (referred to collectively as "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.

Plaintiff's Motion ("Mot.") lacks any legal basis on which this Court could grant summary judgment and significant questions of fact preclude same. As an initial matter, Plaintiff has no standing to assert a "direct action" against Defendants under New York Insurance Law §3420 ("§3420"). At best, §3420 only allows Plaintiff to step into the shoes of Hedman Resources Limited ("Hedman") and pursue whatever rights Hedman has against the Defendants, if any. However, in this case, Hedman has no rights against Defendants as a result of duly executed settlement agreements entered into between Hedman and the Defendants (the "Agreements") to resolve complex and sophisticated coverage disputes.

Even if this Court does find that Plaintiff maintains standing under §3420, it remains the burden of the Plaintiff to prove Hedman is entitled to coverage under insurance policies issued to Gulf & Western Industries, Inc ("Gulf & Western (US)"). In order to do so, Plaintiff must demonstrate such facts, including but not limited to, that (1) Hedman is a named assured under the policies; (2) Travelers fully and properly exhausted all underlying insurance and Hedman fully and properly exhausted its own line of Canadian insurance coverage; (3) Mr. Peace's injury-in-fact took place during the policy period; (4) whether and to what extent the limits of the

1

policies at issue are available, if any; and (5) Hedman and/or Plaintiff have satisfied all other terms and conditions of the policies. Plaintiff fails to even come close to establishing any of the above conclusively.

While Plaintiff cannot overcome the aforementioned deficiencies in his claim, even if she could and it was determined that Hedman is entitled to coverage, Plaintiff would only receive the Insurers' pro rata share of the underlying *Peace* judgment. There is no question that New York law follows the pro rata approach to allocation, and Plaintiff's contention that he is entitled to collect the "full amount of the Judgment up to policy limits" is definitively incorrect.

Plaintiff's request for relief under New York Debtor Creditor Law is similarly meritless. Plaintiff fails to satisfy several necessary elements of a fraudulent conveyance claim. Further, Plaintiff presents no admissible evidence disputing the fact that the respective Settlement Agreements were made in good faith for fair consideration. As set forth in Defendants' Motion to Strike the Expert Opinion Affidavit of Professor S. Todd Brown [*Mineweaser* Docket No. 127] and Defendants' Motion to Strike the Affidavits of John N. Lipsitz, Esq. and Michael A. Ponterio, Esq, [*Mineweaser* Docket No. 128] the affidavit testimony submitted by Plaintiff to support his claims are improper, not in admissible form and are otherwise incomplete. Any allegation by the Plaintiff that the Settlement Agreements were fraudulent conveyances is based on pure, unsupported speculation.

Accordingly, for the reasons set forth more fully below, Plaintiff's alleged causes of action are improper and material questions of law and fact exist precluding summary judgment in Plaintiff's favor. Therefore, Defendants respectfully request the Court deny Plaintiff's Motion for Summary Judgment in its entirety.

## <u>COUNTERSTATEMENT OF FACTS</u>

For the sake of judicial economy, Lamorak and Continental incorporate by reference the Statement of Facts provided in their Memorandum of Law submitted in support of their Motion for Summary Judgment in *Edna K. Mineweaser v. One Beacon America Insurance Company, et al.*, 14-cv-585 ("*Mineweaser*"), Docket No. 92-2, as well as the Counterstatement of Facts included in their Memorandum of Law submitted in Opposition to Plaintiff's Cross-Motion for Summary Judgment in *Mineweaser* (Docket No. 134-1), and each of the exhibits referenced therein, as if fully set forth here. For the sake of judicial economy, Defendants will also not burden the Court with duplicate copies of the voluminous record already before the Court in the *Mineweaser* action to the extent the motions address identical legal and factual issues.[1]

As for the facts relating specifically to the *Peace* claim, Plaintiff initiated the instant litigation more than two years after both Lamorak and Continental's respective Agreements with Hedman were finalized. SOF ¶ 8. The purpose of Mr. Peace's action is to enforce against Defendants a December 2014 judgment in the amount of $1,292,266.38 that he was awarded against Hedman for personal injury allegedly caused by exposure to Hedman's asbestos fiber from 1968 through 1979. SOF ¶ 8. It appears Plaintiff has been unsuccessful in enforcing this judgment against the judgment debtor, Hedman, and chooses to attempt to hold Defendants liable under alleged excess insurance policies, instead of seeking to domesticate its judgment against Hedman in Canada.

---

[1] As the Court is aware, Plaintiffs' counsel filed identical documents in support of their Cross-Motion in *Mineweaser* and the instant motion here.

## ARGUMENT

### I.    THE ARGUMENTS PRESENTED IN DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN THE *MINEWEASER* LITIGATION ARE INCORPORATED BY REFERENCE

Lamorak and Continental set forth a multitude of arguments in their Memorandum of Law in Support of their Motion for Summary Judgment (*Mineweaser* Docket No. 92-2) as well as in their Opposition to the Cross-Motion for Summary Judgment filed by Plaintiff in that action (*Mineweaser* Docket No. 134). To the extent Plaintiff asserts identical arguments here, Lamorak and Continental incorporate by reference the arguments set forth in their *Mineweaser* Memorandum of Law and respectfully refer the Court to the arguments and exhibits presented therein. For ease of the Court, Defendants' prior filings are annexed to the Declaration of Joseph J. Schwartz, Esq. ("Schwartz Dec.") as Exhibits A, B, and C respectively. Defendants respectfully request that all applicable facts, arguments, and exhibits set forth in *Mineweaser* be considered as if stated and argued with full force and effect in the instant action.[2]

### II.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS THERE IS NO FINAL JUDGMENT TO ENFORCE.

Plaintiff's Motion for Summary Judgment alleges that there is a Judgment in the amount of $1,292,266.38 that must be satisfied by Hedman's alleged excess insurers. Plaintiff completely fails to bring to the Court's attention motion practice currently pending in the

---

[2] Moreover, to the extent Plaintiff sets forth allegations pertaining to purported deficiencies in Defendants' discovery, such claims are entirely disingenuous. Based on Defendants' discussions with the mediator in this matter to resolve claims of discovery deficiencies by both parties, it was Defendants' understanding that Plaintiff wished to delay resolution of such disputes until after the instant motions were decided by the Court given this Court's stay of the discovery schedule. Regardless, Defendants submit the sworn and admissible affidavits of two witnesses, Ms. Brooke Green and Ms. Connie Gianakas in opposition to Plaintiff's motion. The question of outstanding discovery, if any, is irrelevant to the accuracy and truthfulness of their sworn statements.

underlying *Peace* docket before the Supreme Court of New York, Erie County, which may alter the Judgment against Hedman's and/or render Mr. Peace's judgment invalid.

The motion practice currently pending before the New York Supreme Court relates to Special Electric Company, a co-defendant with Hedman in the underlying asbestos personal injury action. After the *Peace* judgment was entered and prior to filing the Motion for Summary Judgment at issue here, Mr. Peace's counsel – the same counsel that represents him in this litigation – entered a motion seeking to vacate the judgment and order a new trial on liability pursuant to newly discovered evidence as to Special Electric's liability. See *Hubert A. Peace and Rhoda Peace, his spouse, v. Asbestos Corp., Ltd., Index No.* 802680-2013, Motion #22, Plaintiff's Memorandum of Law Seeking to Vacate the Judgment and Order a New Trial on Liability Only, August 17, 2015 ("*Peace* Motion to Vacate") (Schwartz Dec. Exhibit C).

While Hedman was found to be 50% liable for Mr. Peace's injuries caused by alleged exposure to asbestos, the jury found Special Electric to be 0% liable. SOF ¶ 10. Plaintiff's counsel, Lipsitz & Ponterio, now seek to re-try their case against Special Electric in light of newly discovered evidence which, they argue, would increase Special Electric's share of liability. SOF ¶ 10. This creates the potential that Hedman's assigned share of liability may also be adjusted.

Thus, Plaintiff wishes to set aside the very same judgment he also wishes to enforce through this litigation. However, Mr. Peace cannot have it both ways. A threshold requirement to commence a § 3420 claim is the existence of a valid judgment. §3420(b)(1). By his own admission through the filing of the *Peace* Motion to Vacate, the $1,292,266.38 Judgment currently issued against Hedman may not be a valid judgment and/or may be subject to

adjustment. Accordingly, Plaintiff's entitlement to bring a cause of action (if any) is premature and the Court should not grant summary judgment to enforce the Judgment.

### III.     PLAINTIFF FAILS TO DEMONSTRATE BODILY INJURY DURING THE DEFENDANTS' POLICY PERIODS

Plaintiff has not established injury in fact during the Defendants' respective policy periods, the controlling trigger for coverage under New York law. *Continental Cas. Co. v. Employers Ins. Co. at Wausau*, 60 A.D.3d 128 (1st Dep't 2008), *leave to app. denied*, 13 N.Y.3d 710 (2009) ("*Keasbey*"); *American Home Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760 (2d. Cir. 1984). Instead, Plaintiff merely states (without citation to any support) that Mr. Peace was exposed to asbestos during the period of 1968 to 1979. Mot. at 26. But mere exposure to asbestos does not trigger a coverage obligation. *American Home Products*, 748 F.2d at 764. Clearly, not all of Mr. Peace's bodily injury took place in Defendants' policy periods (if any at all). In fact, Mr. Peace was not diagnosed with mesothelioma until October 2013, 45 years subsequent to the Defendants' first policy period at issue. SOF ¶ 2, 6. It is incumbent of Plaintiff to establish an actual injury in fact during the policy period in order to trigger a potential coverage obligation. Plaintiff fails to do so.

Furthermore, Plaintiff repeatedly fails to acknowledge the limitations to recovery set forth in § 3420. Namely, recovery for claims brought under § 3420 are limited to the potential recovery under the "terms of the policy…" § 3420 (a)(2). As discussed in *Mineweaser*, New York law is well settled that under the terms of the Defendants' policy provisions, assuming coverage is available, Plaintiff could *at most* be entitled to a pro rata share of liability for policy periods where Plaintiff can establish injury in fact. *Keasbey*, 60 A.D.3d at 147. No such showing is made here.

6

To the contrary, it is well established that § 3420 only permits the injured claimant to "stand in the shoes" of the purported policy holder. *Keasbey*, 60 A.D.3d at 136; *See also Lang v Hanover Ins. Co.*, 3 N.Y.3d 350, 354-355 (2004), citing *Coleman v New Amsterdam Cas. Co.*, 247 N.Y. 271, 275 (1928) ("Under New York's direct action statute, Insurance Law § 3420, the rights of an injured claimant against the insurer are no less and no greater than those of the insured). Also, no cause of action pursuant to § 3420 exists until the injured claimant satisfies the statutory requirement to obtain a valid judgment that goes unsatisfied for a period of thirty (30) days. §3420(a)(2). Thus, at the time of the Defendants' settlement agreements with Hedman, Plaintiff had no such cause of action and, therefore, no standing to bring this claim.

## IV. LAMORAK AND CONTINENTAL'S RESPECTIVE PRO RATA SHARES OF THE *PEACE* JUDGMENT ARE WELL BELOW $1.2 MILLION.

As discussed at length in the Defendants Opposition to the *Mineweaser* Cross-Motion for Summary Judgment, New York courts have firmly established pro rata allocation requiring injury in fact during a policy period. *Consolidated Edison Co. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 224 (2002) (rejecting "all sums" joint and several allocation in favor of pro rata time-on-the-risk allocation); *Olin Corp v. Insurance Co. of N.A.*, 221 F.3d 307, 322-327 (2d. Cir. 2000). Even if Plaintiff were entitled to coverage, which he is not, under pro rata allocation Defendant Insurers are simply not liable for the entirety of the underlying judgment. Plaintiff alleges Peace was first exposed to asbestos in 1968. Mot. at 25. Thus, for purpose of this explanation only, the Insurers assume that (1) 1968 as alleged by Plaintiff, is the period in which the allocation period begins; and (2) Plaintiff has demonstrated that all primary coverage has been exhausted. Mr. Peace died in 2015. Accordingly, simply for purposes of this explanation, the end date for the pro rata allocation spread is 2015. *Olin Corp. v. Certain Underwriters at Lloyd's*, 468 F.3d 120, 130-31 (2d Cir. 2006)(ruling that pro rata allocation period ends at the point in time when the

injurious process ceases). Thus, the Insurers apply a 47-year allocation period to the *Peace* Judgment. Accordingly, if coverage was available for the *Peace* Judgment, under New York law each policy year across the spread period would be responsible for $27,495 of the Judgment ($1,292,266.38/45). The first layer excess policies issued by Lamorak cover five policy years during the above spread period (1968–1973). Therefore, Lamorak could at most be responsible for $137,475 of the *Peace* Judgment ($27,495*5). Likewise, Continental only issued one first layer excess policy during the applicable spread period (1976–1977, which assumes 90% of a co-insured policy period) and, as such, could only be responsible for $24,745 of the *Peace* Judgment ($27,495*90%). Of course, should the limits of any underlying policies prove to be intact, neither of the excess Insurers would have any coverage obligation at all. Thus, even were Plaintiff to overcome the all hurdles to establish coverage, Plaintiff would not be entitled to collect "full coverage up to the policy limits" under § 3420.

Moreover, Plaintiff's unsupported, blanket assertion that *Viking Pump Inc. v. Century Indemnity Co.*, 2 A.3d 76 (Del. 2009) ("*Viking Pump*") is a "good example of the 'all sums' allocation method" under New York law is incorrect. *Viking Pump* is a decision from a Delaware court that was purportedly decided under New York law. On appeal, the Delaware Supreme Court certified certain questions to the New York Court of Appeals and there will be argument on the questions accepted by certification. Moreover, *Viking Pump* has previously been rejected by New York courts in favor of pro rata allocation. For example, in *Mt. McKinley Ins. Co. v. Corning Inc.*, 2012 N.Y. Misc. LEXIS 6531, *21-26 (Sup. Ct. 2012), the court stated:

> The court notes that it does not find the Delaware Chancery court's decision in *Viking Pump v. Century Indemnity Co.,* 2 A.3d 76 (Del. Ch. 2009) as decisive in this case, as apparently argued by [the insured], to the extent that *Viking Pump* finds for joint and several allocation… This court understands the methodology of examining policy language as shown in the *Viking Pump* decision, but disagrees with the Delaware court's finding.

> *Viking Pump* ignores established New York precedent, is not controlling
> on this court and is limited to the facts and policy language of that case
> itself. This court notes that no New York court has adopted the
> interpretation of policy language in, or holding of, *Viking Pump* to find
> joint and several allocation, and this court does not find it decisive now.

Thus, Plaintiff entirely misrepresents the holding and import of *Viking Pump* on New York law. Furthermore, Plaintiff does not rely on or cite to any policy language in support of this argument. Indeed, the other case law on which Plaintiff purports to rely is likewise mischaracterized. In *Olin Corp. v. Insurance Company of North America*, 221 F.3d 307 (2d Cir. 2000), for example, the Second Circuit applying New York law endorsed pro rata allocation. In fact, the subsequent 2012 and 2015 Olin decisions referenced (but not properly cited) in Plaintiff's Reply brief involved a highly fact-based analysis and explicitly reinforced that the Second Circuit has repeatedly held in the Olin-related cases that pro rata allocation is appropriate and that pro rata allocation is the default. *See, e.g. Olin Corp. v. Ins. Co. of N. Am.*, 2015 U.S. Dist. LEXIS 49682, *16 (S.D.N.Y. April 15, 2015).

## V.    PLAINTIFF FAILS TO ESTABLISH THE NECESSARY ELEMENTS OF A FRAUDULENT CONVEYANCE CLAIM

"To prevail on a fraudulent conveyance claim under New York law, a plaintiff must show (1) the status of plaintiff as creditor of transferors; (2) the existence of a debt antecedent to the transfer; (3) a conveyance; (4) that the conveyance was made at a time of insolvency on the part of the transferors; (5) the absence of fair consideration; and (6) the intent to defraud. *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 2002 U.S. Dist. LEXIS 17256 (S.D.N.Y. September 10, 2002). As is the case in the *Mineweaser* action, Plaintiff fails to satisfy several of these necessary elements.

First, the *Peace* Judgment was not an "existing debt" at the time of the Defendants' respective settlement agreement with Hedman. The *Peace* Judgment was entered on December 18, 2014, over 2 years and 4 months after Lamorak executed its settlement agreement with Hedman, and over 1 year and 11 months after Continental executed its settlement agreement. SOF ¶ 8.. Clearly, the *Peace* Judgment was not a debt antecedent to the transfer. Indeed, N.Y. Debt. & Cred. Law § 271 defines an entity to be "insolvent" were its assets are less than the amount that will be required to its probable liability "on his existing debts as they become absolute and matured." Under New York law, however, potential future tort judgments are not considered existing debts sufficient to challenge a conveyance as fraudulent. *See Shelly v. Doe*, 671 N.Y.S.2d 803 (3d Dept. 1998). Indeed, since Plaintiff became a judgment creditor in December 2014, well after the Insurers' 2012 settlements, he has no standing under N.Y. Debt. & Cred. Law § 273. *See e.g., Standard Chartered Bank v. Kittay*, 628 N.Y.S.2d 307, 307 (2d. Dept. 1995)(holding  NY Debt. & Cred. Law § 273 "makes no provision for those who become creditors after a fraudulent transfer"); *Hillside Manor Rehabilitation & Extended Care Ctr., LLC v. Dallu*, 932N.Y.2d 302, 304 (2d. Dept. 2011) (finding "[a]s Debtor and Creditor Law § 273 makes no provision for those who become creditors after the alleged fraudulent transfer the Civil Court should have granted… partial summary judgment"). In fact, at the time the Insurers' settlement agreements with Hedman were executed, Plaintiff's potential cause of action against Hedman did not exist. *Lippe v. Bairnco Corp.,*, 9 Fed. Appx. 274, 282 (2d Cir. 2004) (finding "[u]nder current New York law, a cause of action accrues in a toxic-tort case not on the date of exposure, but rather on 'the date of discovery of the injury by the plaintiff or… the date when

through the exercise of reasonable diligence such injury should have been discovered by the plaintiff whichever is earlier'").[3]

Second, Plaintiff fails to establish that the Settlement Agreements lacked fair consideration. In reality, the monies paid to Hedman were more than adequate to cover Lamorak's and Continental's pro rata proportional share of the *Peace* judgment under New York law. The Insurers paid Hedman $1.5 million and $1.125 million, respectively, to settle their coverage disputes. Such amounts far exceed any liabilities that the Insurers could face under §3420 if obligated to satisfy their pro rata share of the *Peace* Judgment (*See* discussion at Sec. IV above); *Promenade Nursing Home v. Cohen-Fleisher*, 983 N.Y.S.2d 205 (N.Y. Sup. Ct. Kings County 2013) (holding there was no fraudulent conveyance where the resulting reverse mortgage provided funds that were "more than adequate" to pay the debt owed to the creditor).

Moreover, the value of Plaintiff's claim has no bearing on whether fair value was paid in settlement to Hedman. *See e.g., Lippe*, 99 Fed. Appx. at 280-282 (finding the calculation of "fair value" cannot rely upon the potential liability of future asbestos claimants, because "the hypothetical existence of an unaccrued tort claim does not give rise to a debtor-creditor relationship"). At the very least, Plaintiff explicitly argues that, "Whether or not a purchaser gave 'fair consideration' is a question of fact." Mot. at 32. Thus, Plaintiff concedes that he is not entitled to summary judgment as a matter of law with respect to his fraudulent conveyance claim.

Third, as discussed in *Mineweaser*, Hedman was not rendered insolvent as a result of the settlement agreements with Defendants. To the contrary, each of the Insurers provided Hedman with a substantial sum of money to resolve their ongoing coverage disputes. *See Mineweaser* Opposition Brief Sec. III(B)(i) (Docket No. 134). The settlement payments actually contributed

---

[3] Plaintiff was diagnosed on October 21, 2013. SOF ¶ 6. This is subsequent to the Insurers' settlement agreements with Hedman.

to Hedman's solvency in lieu of an otherwise expensive declaratory judgment action. Indeed, in *Lippe,* 9 Fed. Appx. at 280-282 the Second Circuit held:

> In New York, fraudulent-conveyance liability may not attach absent some prejudice to a creditor of the transferor … **In sum, for plaintiffs to survive summary judgment on their claims for actual and constructive fraud, they must at the very least be able to prove that [the debtor's] creditors were prejudiced by the asset sale**. (Emphasis added.)

Here, Plaintiff cannot establish the required financial "prejudice." The Insurers paid multiples of their respective potential allocation of the *Peace* judgment to resolve a complex coverage dispute – even assuming coverage exists in the first place. There can be no prejudice to Plaintiff.

Finally, despite all Plaintiff's speculation and conclusory statements, Plaintiff fails to establish any intent to defraud with respect to the settlement agreements. Intent to defraud is a necessary element of a fraudulent conveyance cause of action under the New York common law and statutory law. *Network Enters., Inc.,* 2002 U.S. Dist. LEXIS 17256; N.Y. Debt. & Cred. Law § 276. Furthermore, the requisite intent to defraud is that of the transferor, in this case Hedman. *Chen v. New Trend Apparel, Inc.*, 8 F.Supp.3d 406, 438 (S.D.N.Y. 2014). Plaintiff sets forth no facts demonstrating intent to defraud by Hedman (or any of the Defendants for that matter).

Thus, Plaintiff is not entitled to summary judgment as he fails to establish several necessary elements of a fraudulent conveyance claim as a matter of law and, rather, his claim should be dismissed.

## VI. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER D.C.L. 273-a AS THE UNDERLYING *PEACE* LITIGATION WAS FILED AFTER THE SETTLEMENT AGREEMENTS WERE SIGNED.

In addition to the reasons set forth more fully in Defendants' Opposition to the *Mineweaser* Cross-Motion for Summary Judgment, any claim that Defendants' respective

Settlement Agreements with Hedman were fraudulent conveyances lacks any evidentiary support. As an important note with regard to Mr. Peace, Plaintiff simply cannot satisfy the timing requirements imposed under New York D.C.L. and the common law.

In sum, for New York D.C.L. § 273-a to apply, a conveyance must have occurred while the parties to the conveyance were defendants in an action for money damages or after a judgment in such action was docketed against them. *See Berner Trucking, Inc. v. Brown*, 281 App. Div. 2d 924 (4th Dept 2001)(conveyances made on or after date of commencement of action were not made in satisfaction of antecedent debt and thus lacked fair consideration); *Furlong v. Storch*, 132 A.D.2d. 866 (1987)(fraudulent conveyance claim was actionable where husband transferred property to girlfriend a day before receiving counterclaim, as service was complete on mailing).

Plaintiff cannot even begin to formulate an argument as to how § 273-a would be applicable here. Lamorak and Continental finalized their Agreements with Hedman in 2012. Plaintiff Peace was not diagnosed with mesothelioma and did not file his action against Hedman in state court until October 2013 – more than a year after the Agreements had been finalized with Hedman. *See* Peace Underlying Complaint. Thus, by definition, Hedman could not have been a defendant in the *Peace* action at the time of the "conveyance," as both the Lamorak and Continental Agreements were executed prior to the filing of the underlying litigation brought by Mr. Peace against Hedman. Plaintiff is unable to satisfy a necessary element of his cause of action as the Agreements were negotiated and/or executed prior to the commencement of the underlying action brought by Mr. Peace against Hedman.

**CONCLUSION**

For all the above reasons, Plaintiff's motion is meritless and Defendants respectfully request the Court deny Plaintiff's Motion for Summary Judgment in its entirety pursuant to Fed. R. Civ. P. 56.

<div style="margin-left:50%">

Respectfully submitted,

**/s/ Joseph J. Schwartz**
Eileen T. McCabe, Esq.
Jaimie H. Ginzberg, Esq.
Joseph J. Schwartz, Esq.
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY 10019
(212) 261-8000

*Attorneys for Defendants, Lamorak Insurance Company, f/k/a OneBeacon America Insurance Company; Resolute Management, Inc., as Administrator for Lamorak Insurance Company; and Continental Insurance Company, Individually and as Successor to Certain Liabilities of Harbor Insurance Company*

</div>

Dated:    New York, New York
          February 9, 2016

14